(39 App. Div. 139.)

### DEADY v. VILLAGE OF LYONS.

(Supreme Court, Appellate Division, Fourth Department. March 22, 1899.)

1. ILLEGAL TAXES.
   A tax levied by a village to raise money to assist the county in repairing its buildings located in the village is invalid.
2. SAME—RECOVERY BY TAXPAYER—FORM OF ACTION.
   One who has paid an invalid village tax may recover the amount paid in an action against the village for money had and received.

Appeal from judgment on report of referee.

Action by William N. Deady against the village of Lyons. From a judgment for plaintiff, defendant appeals. Affirmed.

The following is the referee's opinion:

"A municipal corporation, like a business corporation, is the creature of the state, and possesses only such powers as are given it by its creator. This elementary principle is stated by Cooley (Const. Lim. [6th Ed.] p. 227) as follows: 'The charter, or the general law under which they exercise their powers, is their constitution, in which they must be able to show authority for the acts they assume to perform. They have no inherent jurisdiction to make laws or adopt regulations of government. They are governments of enumerated powers, acting by a delegated authority, so that while the state legislature may exercise such powers of government, coming within a proper designation of legislative power, as are not expressly or impliedly prohibited, the local authorities can exercise those only which are expressly or impliedly conferred, and subject to such regulations or restrictions as are annexed to the grant.' The powers so granted must be strictly construed. 'It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in, or incident to, the powers expressly granted; third, those essential to the declared objects and purposes of the corporation,—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied. Of every municipal corporation, the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, or make any contract,

or incur any liability not authorized thereby or by some legislative act appli-
cable thereto.  All acts beyond the scope of the powers granted are void."
Dill. .Mun. Corp. § 89.

"The charter of the village of Lyons is embodied in chapter 388, Laws 1854,
as modified .or supplemented by the general village act (chapter 291, Laws
1870).  In the act of 1854 the power of taxation is regulated as follows:  'Sec.
24. The village of Lyons shall have power, and is hereby authorized in the
manner prescribed by this act, to raise by general tax, to be assessed upon all
the property in said village which now is or hereafter shall be liable to tax-
ation for county purposes (except such property as shall by this act be exempt-
ed from taxation), all sums which shall be necessary for the following objects,
and no other.'  Then follows an enumeration of certain objects, each of
which has a plain relation to some well-recognized municipal purpose, and none
of which includes the purpose in question in this case.  It is urged by the
defendant that by chapter 308, Laws 1884, the powers conferred by the gen-
eral village act (chapter 291, Laws 1870), to raise money for extraordinary
expenditures by vote of the taxpayers, are granted to the village of Lyons.
The act of 1884 is as follows:  'The trustees and officers of any village of this
state created by  special charter, shall have and possess the same powers as
are prescribed in any general act for the incorporation of villages within this
state, except as such special charter may be in conflict with any provision or
provisions of said general acts.'  It may well be doubted whether this act
gives to the village of Lyons the powers conferred by the general village act
of 1870 to raise money for extraordinary expenditures, for the reason that the
former act relates only to the powers of 'trustees and officers,' and the power
to raise money for extraordinary expenditures given by the general village act
is made dependent upon the will of the corporation, to be manifested by pop-
ular vote.  Fox v. Village of Ft. Edward, 48 Hun, 363, 1 N. Y. Supp. 81, turns
upon this distinction.

"But, assuming that the act of 1884 confers upon the defendant all the
powers enjoyed by villages incorporated under the act of 1870, the question
arises whether authority is found in the latter act for the assessment in
question in this case.  Section 1 of title 4 of the act of 1870 divides village
expenditures into ordinary and extraordinary expenditures.  'Ordinary ex-
penditures' are defined by section 2 as those necessary to carry into effect the
ordinary corporate powers enumerated in section 3 of title 3 of the act.  'Ex-
traordinary expenditures' are not expressly defined.  They may be authorized
by vote of the legal electors, when the question is properly submitted to them
by the trustees.  It is not claimed that the expenditure in question in this
case can be justified as an ordinary expenditure, but it is urged for the de-
fendant that, except for the constitutional limitation hereinafter referred to,
anything which is deemed by a majority of the legal voters to be advanta-
geous to the village justifies an extraordinary expenditure.  This is, in effect,
a claim that, by the exercise of the power of taxation, the majority may take
the property of the minority for other than municipal purposes.  If this claim
is well founded, the minority may, against their will, be compelled to pay
for the building and maintenance of an opera house or the support of a base-
ball club, and this without other legislative authority than that conferred in
the general village act for extraordinary expenditures.  But private property
can be taken, whether by the right of eminent domain or by the right of tax-
ation, only for public purposes.  'Taxation having for its only legitimate ob-
ject the raising of money for public purposes and the proper needs of govern-
ment, the exaction of moneys from the citizens for other purposes is not a
proper exercise of this power, and must, therefore, be unauthorized.'  Cooley,
Const. Lim. (6th Ed.) p. 598.  Municipal corporations being created for special
purposes, and their powers being strictly construed, a right to raise money
by taxation for 'extraordinary expenditures' should be interpreted as relating
only to those special purposes and limited powers, or, in other words, it should
be held to mean 'extraordinary municipal expenditures.'  Thus limited, there
is ample reason for the existence of such a right, dependent upon the will of
the voters at large.  The sums necessary for the maintenance of public schools
and a fire department and board of health would be ordinary expenditures,
while those needed for the construction of permanent, and, perhaps expensive,

buildings for these purposes might well be regarded as outside of the ordinary —that is, extraordinary—expenditures. The expenditure of money for the purpose of retaining the county court house in the village of Lyons cannot be said to be for a village purpose. The fact that a removal of the court house to another village would be a considerable injury to the business interests of the village does not affect the question. The facts remain that the building is the property of the county, not of the village; that the village, as such, makes no use of it; and that the county might, immediately after it had been repaired at the expense of the village, have voted to sell it or tear it down, and change the county seat to another village. That an enterprise tends indirectly to the benefit of every citizen by the increase of general business activity does not justify expenditures in behalf of such an enterprise as for a public purpose. Weismer v. Village of Douglas, 64 N. Y. 91.

"The question, what constitutes a municipal purpose? has been fully discussed in the court of appeals. In re Mayor, etc., of New York, 99 N. Y. 569, 2 N. E. 642; Sun Printing & Publishing Ass'n v. City of New York, 152 N. Y. 257, 264, 46 N. E. 499. No valid distinction can be drawn between building a new court house to secure a county seat and repairing an old one to retain the county seat. The fact that business interests have been built up, and the village has prospered, because Lyons has been for many years the county seat, gives the village no vested interest,—makes the existence of the county seat no part of its franchise. Every investment in business or in real estate in the village has been made subject to the right of the people of the county to change the county seat in the manner provided by the legislature.

"But, if I am wrong in my position that there is nothing in the statutes to authorize the expenditure in question, I am still of the opinion that a statute purporting expressly to authorize it would violate section 10 of article 8 of the constitution, which is as follows: 'No county, city, town or village shall hereafter give any money or property or loan its money or credit to or in aid of any individual, association or corporation or become directly or indirectly the owner of stock in, or bonds of, any association or corporation; nor shall any such county, city, town or village be allowed to incur indebtedness except for county, city, town or village purposes.'

"It is urged by the plaintiff that the money raised by the tax was paid for the reimbursement of certain persons who had advanced the money to the board of supervisors before any tax was authorized, and that, therefore, there was on the face of the transaction a gift by the village to these individuals, plainly a violation of the constitution. Assuming, however, that this may be regarded as belonging to the form, and not to the substance, of the transaction, and that the money was in fact voted and used for the purpose of making repairs upon the county buildings, this was a gift to a corporation and counter to the constitutional provision. The buildings were owned by the county of Wayne, which is a corporation. Laws 1892, c. 686, § 2.

"It is urged on behalf of the defendant that the article of the constitution in question was adopted to prevent such evils as had resulted from statutes which had permitted towns, villages, and cities to bond themselves for the benefit of private corporations, and particularly railroad corporations; that consequently the word 'corporation' should be held to mean 'private corporation'; and that a gift by a village to a county should not be regarded as in violation of the constitution. It is doubtless true that the main evil which provoked the adoption of this section of the constitution was that of improvident railroad bonding (Sun Printing & Publishing Ass'n v. City of New York, 152 N. Y. 257, 46 N. E. 499); but while this fact may be taken into account when, as in the case last cited, it is sought to extend the application of the section to cases not within the literal meaning of its terms, it should not avail to restrict those terms to less than their literal meaning. Few cases might be expected to arise where villages would be tempted to vote money for the repair of county court houses, but the cases would be fewer still in which such an expenditure would not violate the salutary principle that each municipal division should bear its own burdens. The general language of the constitution was not used without good reason. The principle that the words of a statute should be construed in accordance with their usual, literal meaning applies with even more force to the words of the constitution, which, it should

be assumed, were adopted with the utmost deliberation. My conclusion is therefore that the village of Lyons had no authority, under the statutes and the constitution, to raise money by tax for the repair of the county court house, and that, having taken the money of the plaintiff without authority, it is under obligations to return it."

Argued before HARDIN, P..J., and FOLLETT, ADAMS, McLEN-NAN, and SPRING, JJ.

Thad. Collins, Jr., for appellant.
J. Stuart Page, for respondent.

HARDIN, P. J. Defendant, village of Lyons, contains the county seat of Wayne county, and the usual county buildings are there located. In the winter of 1896 the village of Newark, in that county, instituted a vigilant effort to induce the board of supervisors to change the county seat to the village of Newark. An order had been made by a justice of the supreme court requiring the repair of the county buildings in the defendant village. To defeat the efforts of the village of Newark to secure a change of the county seat, the public-spirited citizens in the village of Lyons offered to the board of supervisors a sum of money supposed to be adequate to make the repairs to the county buildings situated in Lyons; and on the 23d day of April, 1897, the trustees of the village of Lyons passed a resolution authorizing the levying upon the taxable property of the village the sum of $17,500 for the purpose of aiding and assisting the board of supervisors of the county of Wayne in defraying the expense of making additions to, and repairs upon, the court house in the said county of Wayne. A special election was called in the village, and the resolution was approved by a large majority of the popular vote that was rendered on that occasion. Thereupon the machinery for taxation was set in motion, and the amount of tax assessed against the plaintiff was $71.03, and a warrant was issued for the collection of the tax, which the plaintiff refused to pay, and a levy was made upon his property in virtue of the warrant, and a sale was had on December 23, 1897, and, under the duress of the levy, the plaintiff was obliged to pay, and did pay, $82.63, to satisfy the tax. It is apparent that the proceeds of the special tax were turned over to the board of trustees to reimburse parties who had advanced money on certain notes, the proceeds of which notes were used for the purpose of inducing the board of supervisors to omit to remove the county seat, and for the purpose of enabling the board of supervisors to use such money in the reparation, alterations, and changes made to the county buildings. This action was commenced on January 17, 1898, for money had and received, and, after a trial before the referee, he found the facts favorable to, and the conclusions of law thereon in favor of, the plaintiff.

1. The illegality of the assessment and tax are clearly demonstrated by the opinion of the learned referee, in language that needs no addition thereto, nor subtraction therefrom.

2. The tax being void, the amount paid may be recovered in an action for money had and received. Bruecher v. Village of Port Chester, 101 N. Y. 240, 4 N. E. 272; Jex v. Mayor, etc., 103 N. Y.

536, 9 N. E. 39; Ætna Ins. Co. v. City of New York, 153 N. Y. 339, 47 N. E. 593. In the latter case the learned judge who delivered the opinion said: "The tax being void, the amount paid the city may be recovered in an action for money had and received." The amount awarded to the plaintiff by the referee was the amount which he was obliged to pay to an officer of the defendant for the use of the defendant. The amount of the recovery corresponds with the loss sustained by the plaintiff. The judgment should be affirmed, with costs. Judgment affirmed, with costs. All concur.